DocuSign Envelope ID: 5535F58E-AA43-4F61-B80A-6A1A7483A555

KRISTA L. BAUGHMAN (SBN: 264600)
kbaughman@dhillonlaw.com
KARIN M. SWEIGART (SBN: 247462)
KSweigart@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Harmeet K. Dhillon
harmeet@libertycenter.org
CENTER FOR AMERICAN LIBERTY
26 1311 S. Main Street, Suite 207
Mount Airy, MD 21771

Attorneys for Plaintiff J.A.

1
2
3
4
5
6
7
8
9
10
11

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## SAN DIEGO DIVISION

| | |
|---|---|
| J.A., a minor, by and through his legal guardians, D.A., an individual, and J.A. an individual,<br><br>             Plaintiff,<br>   vs.<br><br>JEFF LUNA, in his personal and official capacity as Principal of Muirlands Middle School; DR. LAMONT JACKSON, in his official capacity as Superintendent of San Diego Unified School District; DOES 1-10, in their personal capacity,<br><br>             Defendants. | Case Number:<br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**<br><br>**Jury Trial Demanded** |



Plaintiff J.A., a minor, through his legal guardians, D.A. ("J.A.'s Father"), an individual, and J.A. ("J.A.'s Mother"), an individual, for claims against Defendants Principal Jeff Luna ("Luna") in his personal and official capacities, Superintendent Lamont Jackson in his official capacity, and Does 1-10 in their personal capacities (together "Defendants") for actions taken affirming the unconstitutional suspension decision of Principal Luna through the San Diego Unified School District ("SDUSD") office of placement and appeals, alleges as follows:

## INTRODUCTION

1.      Muirlands Middle School ("Muirlands") student J.A., along with around one hundred other fans, wore face paint at a high school football game to show spirit for the team. J.A.'s eye black design—commonly referred to as Warrior eye black—is well known and regularly worn by professional athletes and fans in a wide variety of sports. Yet for this innocently-intentioned and protected expressive conduct, Luna suspended J.A. for committing the "hate crime"—threatening violence to another person with the purpose of intentionally invading legally protected interests—of wearing blackface. Luna offered no evidence to support this outlandish allegation, yet his decision was then rubber stamped by the Doe Defendants in the SDUSD office of placement and appeals, again without providing any evidence to back up the incendiary claims that J.A. engaged in racist activity. By these acts, Luna and Doe Defendants violated J.A.'s clearly established First and Fourteenth amendment rights.

## JURISDICTION AND VENUE

2.      This Action arises under 42 U.S.C. § 1983 in relation to Defendants' violation of J.A.'s Constitutional rights. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42 U.S.C. § 1988.

3.      Venue is proper in this Court pursuant to 29 U.S.C. § 1391(b), because the events giving rise to the claims made herein occurred in this Judicial District, and Defendants have their principal places of business within this District.

//



DocuSign Envelope ID: 5535F58E-AA43-4F61-B80A-6A147483A555

**INTRADISTRICT ASSIGNMENT**

4. This Action is properly assigned to the San Diego Division of the Court, as Plaintiff lives within this division and Defendants have their principal places of business in San Diego County, California.

**PARTIES**

5. Plaintiff J.A., who brings this lawsuit through his legal guardians D.A. and J.A., is a minor who resides in San Diego County, California.

6. Jeff Luna is the Principal of Muirlands within the San Diego Unified School District. On information and belief, Luna resides and works in San Diego County, California. Luna is sued in his personal and official capacity.

7. Dr. Lamont Jackson is Superintendent of the San Diego Unified School District. Superintendent Jackson is sued in his official capacity.

8. Does 1-10 are members of the SDUSD office of placement and appeals who reviewed and issued the decision affirming Principal Luna's decision to suspend J.A. Does 1-10 are sued in their personal capacity.

**BACKGROUND**

9. Eye black has long been used by athletes of all races to reduce glare from lights on the field of play. However, in recent decades its function has enlarged beyond mere glare reduction to be used by

//
//
//
//
//
//
//
//
//

3

athletes[1, 2, 3],

 

coaches[4, 5],

 

[1] https://s.hdnux.com/photos/42/20/16/8979375/3/920x920.jpg (last visited January 12, 2024).

[2] Cardinals sign former Arizona State OL Cohl Cabral (2023), https://arizonasports.com/story/3532331/cardinals-sign-former-arizona-state-cohl-cabral/ (last visited January 12, 2024).

[3] Sydney Shaw, Kylie Ohlmiller Talks Stony Brook LAX and Her Signature Eye-Black (2020), https://justwomenssports.com/reads/kylie-ohlmiller-talks-stony-brook-lax-and-her-signature-eye-black/(last visited January 12, 2024).

[4] Brian Floyd, UCLA coaches are wearing war paint (2012), https://www.sbnation.com/2012/11/4/3597450/ucla-coaches-war-paint-photos (last visited January 12, 2024).

[5] Graham Watson, UCLA coaches sport war paint during blowout against Arizona (2012), https://sports.yahoo.com/blogs/ncaaf-dr-saturday/ucla-coaches-sport-war-paint-during-blowout-against-160111168--ncaaf.html?utm_source=twitterfeed&utm_medium=twitter&guce_referrer=aHR0cHM6Ly93d3cuYmluZy5jb20v0v&guce_referrer_sig=AQAAALDWVIAJhMqESE1EuNQvolfd-7XBZG-Tu14Bhkuyzj9CgUZ8FOrjDLPgGwb97SpPoEos0DxDIW73xLKU4FScuDCZwKH9cX7Rtij4a2rXY-HrDUy52AL7-0oBnSift2UrVdemU_4qN9l1T_yogPIHKKpygXPK9TTGEiD5NLsL3cjT&guccounter=2 (last visited on January 12, 2024).



and fans [6, 7, 8, 9]







as a form of expression.

      10.    Far from just being limited to functional use by athletes on the field, eye black is a form of expression. As the website and product innovator eyeblack.com states, "eyeblack.com's innovation isn't just for athletes, but translates to the fan experience …. Fans can support their team and athletes from the stand using the same product on the field …. **Eyeblack and face paint have become a staple for athletes and fans alike**."[10]

---

[6] Kenny DeJohn, A Deal's a Deal: Beninati Sticks to His Word, Sport's Ohlmiller's Eye Black, https://www.usalaxmagazine.com/pro/athletes-unlimited/a-deals-a-deal-beninati-sticks-to-his-word-sports-ohlmillers-eye-black (last visited January 12, 2024).

[7] Football eye black, Football face paint, Eye black designs, https://www.pinterest.com.mx/pin/489625790722304867/ (last visited January 12, 2024).

[8] Nature's Paint, https://www.naturespaint.org/store/p28/Sports_Eye_Black_Stick.html#/ (last visited January 12, 2024).

[9] Danny Fox, Louisiana Sports Hall of Fame Online Auction (2012), https://1130thetiger.com/louisiana-sports-hall-of-fame-online-auction/ (last visited January 12, 2024).

[10] EyeBlack, https://www.eyeblack.com/ (last visited January 12, 2024).



11.     As demonstrated above, eye black starting under the eyes and going in a triangle shape towards the chin is a common eye black design. It is specifically referred to, and marketed as, warrior eye black (hereinafter referred to as "Warrior eye black.") [11], [12].




12.     Professional baseball player Bryce Harper gained notoriety for wearing Warrior eye black. A May 2, 2013, USA Today Article about Bryce Harper stated about the picture below, that "[l]ong before he made the Majors, Harper was known for wearing Ultimate Warrior-style eye black." [13]



13.     In a January 11, 2013, promotional video for the official Major League Baseball video

---

[11] Ebay, Authentic Warrior EYEBLACK under eye stickers 2 Pair OU Sooner Sport Team Spirit, https://www.ebay.com/itm/114181190362?var=0&mkevt=1&mkcid=1&mkrid=711-53200-19255-0&campid=5338590836&toolid=10044&customid=5d843783895b1607ddb752220cb323f0 (last visited January 12, 2024).
[12] EyeBlack, https://www.eyeblack.com/collegiate/georgia-g-bulldogs-warrior-eyeblack.html (last visited January 12, 2024).
[13] Ted Berg, All of Bryce Harper's best looks in one terrifying image, https://ftw.usatoday.com/2013/05/all-of-bryce-harpers-best-looks-in-one-terrifying-image (last visited January 12, 2024).



Verified Complaint                                          Case No. 23-CV-2014 TWR (DEB)

DocuSign Envelope ID: 5535F58E-AA43-4F61-B80A-5A147483A555

game, Bryce Harper models "the warrior" style of eye black, which he says, "tells the pitcher you are ready for battle."[14]

14.     Fans have also posted YouTube videos teaching how to apply Bryce Harper "warrior" style eye black.[15]



15.     J.A. is a thirteen-year-old middle school student at Muirlands. J.A. has long been a fan of Warrior eye black because it is frequently worn by professional athletes he admires, and he thinks it looks cool. Prior to the events at issue in this lawsuit, J.A. had worn Warrior eye black on many prior occasions, including at sporting events, playing paintball, and even at a birthday party to play nighttime capture the flag. J.A. and his friends refer to this style of eye black as wearing "spikes." He has never received any complaints about his preferred eye black design until the events described below.

16.     On October 13, 2023, Plaintiff J.A., along with friends and a trusted adult, attended a football game for La Jolla High School (hereinafter referred to as the "Game").

17.     The Game was not affiliated with or sponsored by Muirlands.

18.     J.A. spent most of the Game with friends who happen to be racial minorities, including a friend who is Hispanic and another who is Black. J.A. did not have eye black on his face when he arrived at the Game. J.A. observed that about half the people in the stands, including several other Muirlands students, were wearing eye black or other face paint. Many fans were sharing it with one another and helping one another create styles on their faces.

---

[14]     Playstation,     MLB     13     Cover     Showdown     |     Bryce     Harper     "Game     Faces," https://www.youtube.com/watch?app=desktop&v=5Ynje3LxEEM (last visited January 12, 2024).
[15]  Jayd3n, Eye Black / Bryce Harper Warrior Eyeblack Tutorial (2017), https://www.youtube.com/watch?v=8T_ITLQzOyk (last visited January 12, 2024).



19.     SDUSD does not have any rules or policies prohibiting fans from wearing eye black or face paint at games.

20.     At around 8:30 p.m., one of J.A.'s friends, who happens to be Hispanic, painted Warrior eye black on J.A.'s face. When his friend had finished, J.A. asked a Black security guard at the Game how the spikes looked. The security guard said it looked good and complimented J.A. on his design.

21.     Neither J.A.'s Hispanic friend who painted the design, nor his Black friend who he was with at the time, expressed offense to J.A.'s display of Warrior eye black. In fact, not a single person at the Game expressed to J.A. or his friends that they were offended by J.A.'s Warrior eye black. A picture of J.A. wearing the Warrior eye black at the Game is below.



22.     J.A.'s intent in having his friend paint Warrior eye black on his face was to show spirit for the football team along with the many other fans in attendance. He was not familiar with the concept of "blackface"[16] at the time he put on the Warrior eye black. He had no intent to mimic or mock anyone when he donned the Warrior eye black, nor did he engage in any behavior that could be characterized as mimicking or mocking Black people while wearing it. He and his friends enjoyed a fun and uneventful evening cheering at the Game, including for the approximately fifteen to thirty minutes J.A. was wearing

---

[16] Blackface is the act of intentionally darkening one's face to mimic and mock Black people. *See blackface*, MERRIAM-WEBSTER.COM (accessed on January 16, 2024), https://www.merriam-webster.com/dictionary/blackface?utm_campaign=sd&utm_medium=serp&utm_source=jsonld. It originated in minstrel shows of the mid-19th century, where performers darkened their skin and depicted Black people in a derogatory manner. *Id.*

Warrior eye black before he left around 9:00 p.m. No one said anything negative to J.A. about his Warrior eye black. In fact, J.A. received compliments about his eye black design, including from other racial minorities in attendance.

23.    J.A. was not involved in any fights at the Game and did not observe any violence whatsoever occur at the Game. J.A. did not use any racial slurs at the Game or make any comments regarding race, either before or after he put on the Warrior eye black. J.A. never threatened violence to anyone. Police were present, and, to J.A.'s knowledge, no one complained to police about his Warrior eye black or his conduct.

24.    J.A. is small for his age, falling between the fifth and tenth percentile for height and weight. He is significantly smaller than the average middle schooler, let alone the average high schooler. His demure stature alone would have put him at extreme risk of harm if he had been mocking others, using racial slurs, or threatening violence around a group of high school football players and other fans.

25.    When J.A. returned to Muirlands on Monday, no teachers, students, or administrators mentioned his attendance at the La Jolla football game the prior Friday night. There was no discussion, in classroom or out of classroom, about J.A.'s Warrior eye black. J.A. did not witness, and was not a part of, any disruptions on campus that day. On information and belief, no disruptions occurred on campus Monday to Wednesday of that week of school. School was normal and uneventful.

26.    But on Wednesday, October 19, 2023, J.A. was removed from class during the last ten minutes of the school day and sent to Principal Luna's office.

27.    Principal Luna told J.A. that the high school had received complaints that someone matching his description had worn blackface at the La Jolla football game on Friday night. Principal Luna asked, and J.A. confirmed, that he had been wearing a gray shirt and black pants at the Game. Principal Luna also told J.A. that there had been complaints that a group had been yelling "racial stuff" at the other team and their fans, but Principal Luna stopped short of accusing J.A. of having been the one who yelled racial comments.

28.    J.A. vehemently denied having worn blackface or having made any racial comments. He told the principal he had worn "spikes" at the Game, the common warrior style face paint worn regularly by fans and players across numerous sports. Luna asked what J.A.'s face looked like, and J.A. drew a



1   picture of Warrior eye black.  Principal Luna appeared not to know how J.A. was wearing his eye black

2   at the Game until J.A. drew him the picture. J.A. also provided a written statement to the school.

3   Principal Luna did not tell J.A. that he was at risk of being punished at all, let alone suspended.

4           29.     California law specifically proscribes procedures that must be followed when a school

5   suspends a student. Cal Educ. Code § 48911 ("Section 48911"). These procedures include (a) informing

6   the pupil the reason for the disciplinary action, (b) informing the pupil of the other means of correction

7   that were attempted before the suspension, (c) providing the evidence against the pupil, and (d) giving

8   the pupil an opportunity to present evidence in his or her defense. *Id.*

9           30.     Principal Luna failed to inform J.A. of the other means of correction that were attempted

10   before the suspension, failed to provide J.A. with the evidence against him, and failed to give J.A. an

11   opportunity to present evidence in his defense.

12           31.     Principal Luna did not provide or describe any of the evidence he allegedly had

13   demonstrating that J.A. was wearing blackface at the Game. He offered no evidence to suggest that J.A.

14   had an intent to mimic or mock Black people. Principal Luna did not catalogue any evidence against

15   J.A. or provide J.A. with an explanation of why suspension was the appropriate level of discipline for

16   this offense rather than lesser measures. Thus, J.A. had no opportunity to respond to or refute any of the

17   evidence upon which Luna based his decision to suspend J.A.

18           32.     Principal Luna did not claim or offer any evidence suggesting that J.A.'s Warrior eye

19   black had caused a disruption or was threatening to cause a disruption at Muirlands.

20           33.     Principal Luna did not provide any evidence by which one could infer from the facts and

21   circumstances that J.A. wore the Warrior eye black because he had the specific intent, by means of

22   threats of violence to another person, to invade an interest protected by state or federal law.

23           34.     Principal Luna did not suggest that he had any firsthand knowledge of the alleged

24   complaints, had personally reviewed the complaints, or had conducted *any* investigation into the

25   veracity of the complaints. His information appeared to be entirely based on third-hand comments.

26           35.     After J.A. left the meeting, J.A. called and told his father that Principal Luna had accused

27   him of wearing blackface. That evening, J.A.'s Father was able to secure a photograph of J.A. (shown

28   in Paragraph 20) as he appeared with the Warrior eye black at the Game. Later that evening, Principal



1    Luna left a message with J.A.'s parents, requesting a meeting with them the next morning.

2        36.    Thursday morning, J.A.'s Father and Mother went to school for a meeting with Principal

3    Luna. Principal Luna made clear that the sole purpose of the meeting was to inform J.A.'s parents that

4    J.A. was being suspended. He had no intent of speaking with J.A.'s parents to gather information for an

5    investigation.

6        37.    J.A.'s Father provided Principal Luna with the photograph of J.A. at the Game. Luna

7    appeared surprised when he saw the picture but did not back down. J.A.'s Father asked Principal Luna

8    if that was a picture of blackface, and Principal Luna said yes. J.A.'s Father then showed Principal Luna

9    numerous photos of professional athletes wearing Warrior eye black. In response, Principal Luna

10   suggested that athletes wearing Warrior eye black was not blackface, but it was blackface when J.A.

11   wore it because J.A. was not playing in the Game.

12       38.    Principal Luna again suggested to J.A.'s parents that the high school had received

13   complaints that a group of kids was wearing blackface and yelling racial slurs into the crowd.  J.A.'s

14   Father asked what evidence they had suggesting that J.A. had an intent to wear blackface or was a part

15   of a group of kids yelling racial slurs. Principal Luna would not answer the questions and did not provide

16   any evidence. J.A.'s Father asked Luna what evidence they had that J.A. had yelled anything into the

17   crowd, and Luna, once again, refused to answer.

18       39.    J.A.'s Father asked if there was any video evidence from the Game itself, and Principal

19   Luna's answer suggested that he had not sought to obtain this evidence and had no interest in doing so.

20       40.    During the meeting, Principal Luna failed to provide any evidence to suggest that J.A.'s

21   Warrior eye black was actually an act of blackface—darkening one's face with the intent to mimic or

22   mock Black people. Principal Luna did not suggest that he had personally spoken to any of the

23   complainants or done any investigation into what happened at the Game. His knowledge appeared to be

24   based entirely on third-hand accounts of the Game. Neither Principal Luna nor any other school official

25   appeared to have interviewed any of the students J.A. was with at the Game to determine what had

26   happened or the nature of J.A.'s intent in wearing the Warrior eye black.

27       41.    Principal Luna did not suggest any other corrective measures short of suspension, nor

28   did he provide an explanation of why suspension was the appropriate punishment for the offense.



42.    Principal Luna did not suggest that there had been any disruptions at Muirlands Middle School due to J.A.'s actions.

43.    Principal Luna also told J.A.'s parents that he could call "other agencies" in response to what J.A. did, but had not yet done so, which, it seemed to J.A.'s parents based on the tone and context in which this was mentioned, was a threat to call the police or child protective services on J.A. or his parents.

44.    Throughout the meeting, Principal Luna made clear to J.A.'s parents that he had no interest in either providing J.A.'s parents with any evidence that supported his decision or hearing any evidence from J.A.'s parents that might challenge his predetermined outcome.

45.    Due to Luna's failure to present any evidence in support of these allegations, his failure to conduct even the most cursory investigation, and his failure to consider evidence demonstrating J.A.'s innocence, on information and belief, Luna's motive for punishing J.A. was so that he could make himself look better by claiming he was taking a "tough stand" against racism. On information and belief, Luna punished an innocent child to advance his own reputation and career prospects.

46.    Ultimately, Luna suspended J.A. for two days and banned him from all District sporting events for the rest of the school year.

47.    J.A. and his parents were not provided the suspension report until the next Monday after J.A. had served his suspension. A true and correct copy of the suspension report, redacted to protect J.A.'s privacy, is attached to this complaint as Exhibit A ("Suspension Report").

48.    The Suspension Report described the incident for which J.A. was being suspended as "painted his face black at a football game."

49.    The Suspension Report included a section titled "previous intervention attempts," yet Principal Luna did not identify *any* prior intervention attempts in either his meeting with J.A. or his meeting with J.A.'s parents. Further, it is unclear what these prior attempts refer to or how they relate to the allegations at hand.

50.    California law specifically details the offenses for which a student may be suspended. *See* Cal. Educ. Code §§ 48900–48900.7.

51.    The Suspension Report stated J.A. was being suspended for a "Hate Incident," a



1    reference to the authority to suspend found in California Education Code § 48900.3 ("Section 48900.3").

2    52.    Section 48900.3 authorizes suspensions if it is determined that a pupil "has caused,

3    attempted to cause, or participated in an act of, hate violence," which are acts "punishable under Section

4    422.6, 422.7, or 422.75 of the Penal Code." These portions of the penal code are commonly referred to

5    as Hate Crime statutes.

6    53.    Hate Crimes are specific intent crimes, meaning the act punished must be "willful." *In*

7    *re M.S.* 896 P.2d 1365, 1372 (Cal. 1995). "[T]o violate the statute, one must specifically intend, by

8    means of threats of violence to another person, to invade interests protected by constitutional or statutory

9    authority." *Id.* at 1373. "Both [Penal Code] sections 442.6 and 422.7 require that the defendant

10   *specifically intend* to deprive the victim of protected rights 'because of' the victim's protected

11   characteristic.'" *Id.* at 1375 (emphasis added).

12   54.    Though the Suspension Report accuses J.A. of intentionally causing, attempting to cause,

13   or participating in a threat of violence to deprive a victim of protected rights, Principal Luna never

14   provided any evidence to suggest that J.A. perpetrated a threat or invaded the constitutional or statutory

15   interests of another. Principal Luna never suggested or provided evidence that J.A. targeted anyone at

16   all, let alone targeted someone because of a protected characteristic. And Principal Luna never provided

17   any evidence that J.A.'s intent in wearing Warrior eye black was to mimic or mock Black people.

18   55.    Simply put, Principal Luna declared J.A. guilty of committing a Hate Crime without any

19   evidence, whatsoever, to support his outrageous contentions.

20   56.    J.A., through his father, appealed his suspension to the District. A true and correct copy

21   of the appeal email, redacted to protect the identity of J.A., is attached as Exhibit B.

22   57.    The Doe Defendants on the SDUSD Office of Placement Appeals denied the appeal

23   approximately three weeks later without any explanation of the related facts and circumstances they

24   claimed were sufficient to uphold the suspension. Like Principal Luna, they provided no evidence in

25   support of the suspension. A true and correct copy of the Suspension Appeal Decision, redacted to

26   protect J.A.'s privacy, is attached to this Complaint as Exhibit C.

27   58.    As a result, J.A. has suffered significant emotional distress. As a minor child, he was

28   accused of having participated in a heinous racist act when all he did was attend a football game and



cheer for the team. He has been falsely and maliciously labeled a racist by adults he trusted and respected. And all this, without *any* supporting evidence.

59.     J.A.'s suspension put him behind in his schoolwork. Even worse, he fears that his teachers believe the lie told by Principal Luna and SDUSD that his innocent acts were a Hate Crime intended, as the statute says, to cause an act of hate violence punishable by imprisonment.

60.     J.A.'s suspension for a Hate Crime is also on his permanent school record. This suspension could impact his ability to gain acceptance to certain high schools (to which he will be applying in winter and spring 2024), colleges, and beyond. He would likely have to report it to state character and fitness committees should he ever wish to become an attorney. It could even impact his ability to obtain government clearances or pursue certain occupations later in life.

61.     In addition, Luna told J.A. he was forbidden from attending any SDUSD sporting events for the rest of the school year. This inhibits J.A.'s ability to participate in District sports or socialize with friends and classmates, thereby fundamentally altering his educational experience at a formative time in his young life.

**COUNT I**

**Violation of the First Amendment**

**(J.A. against all Defendants)**

62.     Plaintiff incorporates by reference the allegations in the prior paragraphs as if fully contained herein.

63.     The First Amendment, incorporated to States by way of the Fourteenth Amendment, prohibits government actors from restricting expression because of its message, its ideas, its subject matter, or its content.

64.     The First Amendment applies to expressive conduct.

65.     Students do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.

66.     Private student expression at public schools is protected by the First Amendment so long as it is not disruptive.

67.     Muirlands is a public school.



Verified Complaint                                                    Case No. 23-CV-2014 TWR (DEB)

68.    J.A. engaged in expressive speech when he wore Warrior eye black to show spirit at the Game.

69.    J.A.'s speech was protected by the First Amendment.

70.    J.A.'s speech was not indecent, lewd, or vulgar speech.

71.    J.A.'s speech did not promote illegal drug use.

72.    J.A.'s speech did not bear the imprimatur of Muirlands.

73.    The Game was not affiliated with Muirlands.

74.    The Game was not sponsored by Muirlands.

75.    J.A.'s speech did not relate to any Muirlands personnel or student.

76.    J.A.'s speech did not happen on Muirlands' grounds or during school hours.

77.    J.A.'s speech was not bullying.

78.    J.A.'s speech was not targeted at any group or any individual.

79.    J.A.'s speech did not cause a substantial disruption of any educational, extracurricular, or other events.

80.    J.A.'s speech did not create a foreseeable risk of reaching Muirlands property and causing a substantial disruption.

81.    Muirlands's abstract desire to avoid controversy provides no basis for restricting J.A.'s protected speech.

82.    There were no constitutionally valid reasons to restrict J.A.'s speech.

83.    Principal Luna violated J.A.'s constitutional rights when he punished J.A. for his speech without adequate constitutional justification.

84.    The Doe Defendants on the SDUSD Office of Placement Appeals violated J.A.'s constitutional rights when they denied J.A.'s suspension appeal of Luna's baseless suspension decision.

85.    In punishing J.A. for his protected speech, Principal Luna and the SDUSD Office of Placement and Appeals exhibited oppression, malice, gross negligence, willful or wanton misconduct, and/or a reckless disregard for J.A.'s civil rights.

86.    J.A. has no adequate remedy at law and will suffer serious and irreparable harm if school and district officials are not preliminarily and permanently enjoined from disseminating school records



1  stating that J.A. was suspended for committing a Hate Crime and from enforcing J.A.'s ban on attending
2  or participating in District sporting events.

3      87.    J.A. is entitled to preliminary and permanent injunctive relief expunging the suspension
4  from J.A.'s student records and enjoining District personnel from enforcing the sports ban.

5      88.    Superintendent Jackson, in his official capacity, has the power to implement Plaintiff's
6  requested injunctive relief as he has supervisory authority over all SDUSD employees.

7      89.    Principal Luna, in his official capacity, has the power to implement Plaintiff's requested
8  injunctive relief as he has supervisory authority over all Muirlands Middle School employees.

9      90.    J.A. found it necessary to engage the services of private counsel to vindicate his rights
10  under the law. J.A. is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

11                              **COUNT II**
12                    **Violation of the Fourteenth Amendment**
13                          **Right of Due Process**
14      **(J.A. against Defendant Luna and Doe Defendants, all in their individual capacities)**

15      91.    Plaintiff incorporates by reference the allegations in the prior paragraphs as if fully
16  contained herein.

17      92.    J.A. has a due process right and a property interest in his education.

18      93.    J.A. has a liberty interest in exercising his First Amendment rights at past and future
19  District athletic events.

20      94.    J.A. was not furnished with a description or provided an explanation of the evidence that
21  Principal Luna had against him, or an opportunity to refute that evidence prior to being suspended and
22  banned from District sporting events.

23      95.    In failing to provide J.A. with even the most basic due process, Principal Luna and the
24  SDUSD Office of Placement and Appeals exhibited oppression, malice, gross negligence, willful or
25  wanton misconduct, or a reckless disregard for J.A.'s civil rights.

26      96.    J.A. found it necessary to engage the services of private counsel to vindicate his rights
27  under the law. J.A. is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.
28  //



**COUNT III**

**Violation of the Fourteenth Amendment**

**Equal Protection – Class of One**

**(J.A. against all Defendants)**

97.    Plaintiff incorporates by reference the allegations in the prior paragraphs as if fully contained herein.

98.    In suspending J.A. for wearing Warrior eye black, Principal Luna and Does 1-10 intentionally treated J.A. differently from other similarly situated football fans at the Game.

99.    There was no rational basis for treating J.A. differently than the approximately one hundred other fans at the Game wearing eye black and face paint in their efforts to cheer for the team.

100.   J.A. was similarly situated to other fans, among them Muirlands students, who were at the Game wearing eye black and face paint as their situations were directly comparable in all material respects.

101.   J.A. was irrationally singled out for punishment.

102.   In punishing J.A. for wearing Warrior eye black, Principal Luna and the SDUSD Office of Placement and Appeals exhibited oppression, malice, gross negligence, willful or wanton misconduct, or a reckless disregard for J.A.'s civil rights.

103.   Superintendent Jackson, in his official capacity, has the power to implement Plaintiff's requested injunctive relief as he has supervisory authority over all SDUSD employees.

104.   Principal Luna, in his official capacity, has the power to implement Plaintiff's requested injunctive relief as he has supervisory authority over all Muirlands Middle School employees.

105.   J.A. found it necessary to engage the services of private counsel to vindicate his rights under the law. J.A. is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

1.    Preliminarily and permanently enjoin Defendants and their officers, agents, servants, employees, attorneys, and other persons who are in active concert with any of them from

17



1  any continuing punishment or sanction against J.A. on account of his constitutionally

2  protected speech, including removing J.A.'s sporting-event ban and expunging from

3  J.A.'s school records all references to the incident at issue;

4  2. Declare that the disciplinary actions taken against J.A. for this incident violate J.A.'s

5  rights under the First and Fourteenth Amendments of the United States Constitution;

6  3. Award Plaintiff damages in an amount to be determined at trial;

7  4. Award Plaintiff punitive damages in an amount to be determined at trial;

8  5. Award Plaintiff nominal damages in an amount to be determined at trial;

9  6. Award Plaintiff costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

10  7. Grant such other relief as this Court deems just and appropriate.

11

12  Date: January 16, 2024  Respectfully submitted,
                            **DHILLON LAW GROUP INC.**

13

14  By: _____

15  KRISTA L. BAUGHMAN

16  KARIN M. SWEIGART
    **Attorneys for Plaintiff**

17

18

19

20  **REQUEST FOR JURY TRIAL**

21  The Plaintiff hereby demands a jury trial.

22

23  Date: January 16, 2024  **DHILLON LAW GROUP INC.**

24

25  By: _____

26  KRISTA L. BAUGHMAN

27  KARIN M. SWEIGART
    **Attorneys for Plaintiff**

28

18



1

2

**VERIFICATION**

3   I, J.A., hereby affirm under penalty of Perjury:

4       1.  I am a minor (under eighteen years old).

5       2.  My Parents are D.A. and J.A., through whom I bring this lawsuit.

6       3.  I am the Plaintiff in this Lawsuit.

7       4.  I have read the factual allegations in the foregoing Verified Complaint.

8       5.  The factual allegations are, to the best of my knowledge and belief, true and correct.

9       6.  For all matters stated on information and belief, I do not have personal knowledge, but believe

10         them to be true based on other facts and circumstances.

11

Executed on    1/16/2024   , in   REDACTED  , California.

12

13

14              REDACTED

15              J.A., Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28



Verified Complaint                                   Case No. 23-CV-2014 TWR (DEB)

1

**VERIFICATION**

2   I, D.A., hereby affirm under penalty of Perjury:

3       7.  I am over the age of 18 and competent to testify.

4       8.  I am the parent of J.A., the minor Plaintiff identified in the foregoing Verified Complaint.

5       9.  I have read the factual allegations in the foregoing Verified Complaint.

6       10. The factual allegations are, to the best of my knowledge and belief, true and correct.

7       11. For all matters stated on information and belief, I do not have personal knowledge, but believe

8           them to be true based on other facts and circumstances.

9

10  Executed on _____1/16/2024_____, in _____La Jolla_____, California.

11

12                                  *Daniel Ameduri*

13                          _____
                            D.A., legal guardian for J.A.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28


Verified Complaint                                      Case No. 23-CV-2014 TWR (DEB)

1

2

**VERIFICATION**

3   I, J.A., hereby affirm under penalty of Perjury:

4     1.  I am over the age of 18 and competent to testify.

5     2.  I am the parent of J.A., the minor Plaintiff identified in the foregoing Verified Complaint.

6     3.  I have read the factual allegations in the foregoing Verified Complaint.

7     4.  The factual allegations are, to the best of my knowledge and belief, true and correct.

8     5.  For all matters stated on information and belief, I do not have personal knowledge, but believe

9        them to be true based on other facts and circumstances.

10

11   Executed on ___1/16/2024_____, in ____Juliet Ameduri_____, California.

12

13

14   _Juliet Ameduri_____
       J.A., legal guardian for J.A.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

